UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARTH WESLEY WICKSTRUM, an individual,<br><br>Plaintiff,<br><br>v.<br><br>FCA USA LLC,<br><br>Defendant. | Case No.: 3:20-cv-00336-L-JLB<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO REMAND [DOC. NO. 3]** |

Pending before the Court in this lemon law action is Plaintiff's motion to remand. Defendant filed an opposition and Plaintiff replied. The Court decides the matter on the papers submitted and without oral argument. *See* Civ. L. R. 7.1. For the reasons stated below, the motion is **DENIED**.

**I.   BACKGROUND**

On January 20, 2018, Plaintiff purchased a new truck from Defendant FCA US LLC ("FCA"). (Doc. No. 1-3, Complaint ("Compl.") ¶ 4).  The total cost was $55,382.88.  *Id*.  FCA provided him with an express and implied warranty. (*Id*. at ¶¶ 5 and 7).  After the purchase, the truck began to exhibit several defects, including engine failure and complete power loss. (*Id*. at ¶ 6).  Its value is now *de minimis*. (*Id*. at ¶ 10).

On January 16, 2020, Plaintiff filed this action under the Song-Beverly Act (the "Act") in state court. (Doc. No. 1, Notice of Removal ("NOR")). Plaintiff seeks, among other alternatives, restitution under Cal. Civ. Code § 1793.2 of the amount paid. (Compl.) He also requests a civil penalty in the full amount authorized under Cal. Civ. Code § 1794, two times his actual damages. *Id*.

On February 20, 2020, FCA removed this action to federal court under 28 U.S.C. §§ 1332 and 1441. (NOR). On March 20, 2020, Plaintiff filed the motion to remand. (Doc. No. 3, Motion to Remand ("MTR")).

## II. LEGAL STANDARD

Federal courts have limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A defendant may remove an action from state court to federal court if the action could have been brought in federal court in the first instance. 28 U.S.C. § 1441(a). The removal is proper when a case originally filed in state court presents a federal question or where there is diversity of citizenship among the parties and the amount in controversy exceeds $75,000. *See* 28 U.S.C. §§ 1331, 1332(a).

"The burden of establishing federal jurisdiction is on the party invoking federal jurisdiction." *United States v. Marks*, 530 F.3d 799, 810 (9th Cir. 2008); *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 683 (9th Cir. 2006).

To determine whether the amount in controversy is met, courts look to the complaint itself. *Abrego Abrego*, 443 F.3d at 690. "Where it is not facially evident from the complaint that more than $75,000 is in controversy, the removing party must prove" it is more likely than not "that the amount in controversy meets the jurisdictional threshold." *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003).

"The removal statute is strictly construed, and any doubt about the right of removal requires resolution in favor of remand." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009).

### III. DISCUSSION

In this case, the dispute concerns whether the amount in controversy requirement is met.[1] FCA argues the amount exceeds $75,000. To support that calculation, it relies on the potential actual damages, civil penalties, and attorneys' fees. Plaintiff argues FCA failed to show the amount in controversy exceeds the threshold.

"The amount in controversy reflects the *maximum* recovery the plaintiff could reasonably recover." *Arias v. Residence Inn*, 936 F.3d 920, 927 (9th Cir. 2019) (emphasis original); *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 793 (9th Cir. 2018) ("the amount in controversy is the amount at stake in the underlying litigation, and therefore the amount in controversy includes all relief claimed at the time of removal to which the plaintiff would be entitled if [they] prevail.") (internal quotation marks and citation omitted).

### **Actual Damages**

FCA contends Plaintiff could recover the price he paid for the truck, $55,382.88. (NOR at 5); (Compl. ¶ 4). Plaintiff seeks reimbursement of the actual price paid. (MTR at 6); Cal. Civ. Code § 1793.2; (*see also* Compl. ¶ 10) ("Plaintiff seeks . . .the entire purchase price.")

---

[1] The parties do not dispute that there is diversity of citizenship among them. (*See* NOR; MTR).

Plaintiff nevertheless argues FCA cannot rely on the total price paid as a calculation of potential damages because it does not account for the mileage offset authorized under the Act. (MTR at 6).[2]

However, the potential offset does not alter the amount Plaintiff might obtain if he is successful at trial (*i.e.*, what is at stake). *Arias*, 936 F.3d at 927. The offset is not automatic. FCA would need to affirmatively (and successfully) raise it at trial (likely through the introduction of evidence). *See* Cal. Civ. Code §1793.2 ("when restitution is made . . . the manufacturer . . . *may* [reduce the amount] . . . directly attributable to [the prior] use.") (emphasis added); *Niedermeier v. FCA US LLC*, 56 Cal. App. 5th 1052, 1064 (2020) ("the Act *permits* a manufacturer to reduce the restitution.") (emphasis added); *see also* California Civil Jury Instruction (CACI) No. 3241 (indicating the defendant has the burden to prove the number of miles the plaintiff drove prior to first returning the car to cure the defect).[3] The failure to do that might require FCA to reimburse Plaintiff for the entire purchase price. *See* Cal. Civ. Code § 1793.2(d)(2)(B). Therefore, it is appropriate to rely on the total amount paid to determine the amount in controversy.[4] *Fritsch*, 899 F.3d at 793; *see Chavez v. JPMorgan Chase & Co.*, 888 F.3d

---

[2] The formula to calculate the mileage offset is: (number of miles driven prior to first repair attempt) / (120,000 miles) x (vehicle purchase price). Cal. Civ. Code §1793.2(d)(2)(C). There is nothing in the Complaint about a mileage offset. (*See generally* Compl.)

[3] There are several potential disputes that can arise related to the application of the mileage offset. For instance, the manufacturer might not have reliable records that reflect the odometer reading from when the buyer first brought the car to the repair shop to cure the defect. The parties might also dispute whether a defect existed at the time of the first visit.

[4] A statutory limit on recoverable damages is distinct from an offset. *Compare Morris v. Hotel Riviera, Inc.*, 704 F.2d 1113, 1115 (9th Cir. 1983) (court properly considered a statute that limited the amount an individual could receive for a particular claim to $750 when determining amount in controversy). The offset here is more akin to an affirmative defense. *See e.g., St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938) ("the fact that the complaint discloses the existence of a valid defense to the claim"

413, 417 (9th Cir. 2018) (explaining the amount in controversy includes all amounts "at stake" in the litigation at the time of removal, "whatever the likelihood that [the plaintiff] will actually recover them."); *see also Lewis v. Verizon Communs., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) ("the amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability.")  The amount at stake is at least $55,382.88.  (Compl. ¶ 4).

### Civil Penalties

FCA also relies on Plaintiff's request for civil penalties to support the amount in controversy.  The Court can consider the potential civil penalties.  *See, e.g., Chabner v. United Omaha Life Ins. Co.*, 225 F.3d 1042, 1046 n.3 (9th Cir. 2000) (noting that treble damages could have been considered when determining the amount in controversy).

The Act authorizes an award of civil penalties if the car manufacturer willfully refused to cure the defect.  Cal. Civ. Code § 1794(c).  The maximum penalty is two times the amount of actual damages.  *Id*.

Plaintiff argues the Court should not consider the potential civil penalties because it is too speculative that he will obtain a specific amount (if any).  (MTR at 7).  He attempts to equate it to a request for punitive damages.  (*Id*. at 9).  Normally, a plaintiff does not request a specific amount of punitive damages.  As a result, it can be difficult to assess the amount put in controversy without more context (such as awards from analogous cases).  *See, e.g., Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1091 (9th Cir. 2003) (complaint indicating the plaintiff sought punitive damages "'in excess' of $10,000," not "how much 'in excess.'")

---

cannot be grounds for showing failure to meet the amount in controversy requirement); *Geographic Expeditions, Inc. v. Estate of Lhotka*, 599 F.3d 1102, 1108 (9th Cir. 2010).

But the situation here is distinguishable. First, the Act sets forth a specific limit on the amount of civil penalties recoverable. Cal. Civ. Code § 1794(c). More importantly, Plaintiff requests the *full* amount authorized under the Act, two times his actual damages. (Compl. at 6). And the test is what amount Plaintiff put in controversy, not FCA's potential liability. *Lewis*, 627 F.3d at 400. There is nothing in the record to suggest Plaintiff improperly requested the full amount of penalties.[5] Therefore, the Court will consider that amount. *St. Paul Mercury Indem. Co.*, 303 U.S. at 288 ("the sum claimed . . . controls if the claim is apparently made in good faith.")

Overall, FCA met its burden. The potential actual damages combined with the requested civil penalties surpasses the minimum amount in controversy ($55,382.88 (potential actual damages) + $110,765.76 (civil penalties) = $166,148.64).[6] The Court will therefore not address the parties' arguments related to attorneys' fees.

Because the Court has determined it has diversity jurisdiction over this action, it rejects Plaintiff's comity argument. *See, e.g., BNSF Ry. Co. v. O'Dea*, 572 F.3d 785, 793 n.2 (9th Cir. 2009) (Fisher, J., concurring) ("district courts sitting in diversity . . . lack the option of refusing state law claims out of consideration for 'judicial economy, convenience, fairness, and comity.'") (internal citation omitted).

---

[5] Plaintiff alleges the truck's engine failed and it completely lost power. (Compl. ¶ 6). FCA was aware of its obligation to cure the defects. (*Id.* at ¶ 21). Yet, FCA intentionally refused to fulfill its obligations under the warranty. *Id*.

[6] For the mileage offset to reduce the amount below the required threshold, Plaintiff would have had to drive more than 60,000 miles in less than two years. (*See* Compl.) (action filed on January 16, 2020 and car purchased on January 20, 2018) ((60,000/120,000 x $55,382.88) x 3 (multiplier for actual damages plus civil penalty) = $83,074.32). *See Park v. Jaguar Land Rover N. Am., LLC*, 2020 U.S. Dist. LEXIS 115302, at *10-11 (S.D. Cal. July 1, 2020) (noting the party had only used the car for less than a year, so it was reasonable to assume any offset would not be large enough to lower the cumulative amount of damages).

### IV. CONCLUSION

For the reasons stated above, Plaintiff's motion to remand is **DENIED**. In the Motion to Remand, Plaintiff references FCA's answer. (MTR at 7; Doc. No. 6, Reply at 8; *see also* Docket No. 37-2020-00002789, ROA No. 10). FCA did not include its answer with the Notice of Removal. (*See* Doc. No. 1). Therefore, the Court orders FCA to file a copy of its state court answer no later than February 22, 2021. *See* 28 U.S.C. § 1446(a).

**IT IS SO ORDERED**.

Dated: February 12, 2021

_____
Hon. M. James Lorenz
United States District Judge